**Not for Publication in West's Federal Reporter**

**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals

## For the First Circuit

No. 03-1316

VIATCHESLAV G. ABRAMIAN,

Petitioner,

v.

JOHN ASHCROFT, ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Selya, Circuit Judge,
Stahl, Senior Circuit Judge and
Lynch, Circuit Judge.

Viatcheslav G. Abramian on brief pro se.
Peter D. Keisler, Assistant Attorney General, Linda S. Wernery, Senior Litigation Counsel, and Lyle D. Jentzer, Trial Attorney, U.S. Department of Justice on brief for respondent.

September 14, 2004

**Per Curiam**.  Pro se petitioner Viatcheslav G. Abramian ("Abramian"), a native and citizen of the former Union of Soviet Socialist Republics ("USSR"), seeks judicial review of a final order of deportation.  For the following reasons, the petition is denied.

Abramian's claims that the Immigration Judge ("IJ") acted "irrationally" during his hearing, was not impartial and should have been disqualified for having a personal interest in the case, and erred in not finding him "stateless" are all waived because Abramian did not raise them in his appeal to the Board of Immigration Appeals ("BIA").  "Issues not raised before the Board may not be raised for the first time upon judicial review of the Board's decisions."  Ravindran v. INS, 976 F.2d 754, 761 (1st Cir. 1992).[1]

Each of these claims lacks merit in any event.  First, the IJ's remark that the immigration hearing was not a "forum for a civil suit" was not directed toward Abramian's immigration case, but, rather, toward his employment discrimination case against

---

[1]  Since the deportation proceedings were initiated before 4/1/97 and the final order of deportation was issued after 10/31/96, this petition is governed by the transitional rules for judicial review set forth in IIRIRA § 309(c)(4) and former INA § 106, 8 U.S.C. § 1105a. Bernal-Vallejo v. INS, 195 F.3d 56, 61 (1st Cir. 1999).  Pursuant to former INA § 106(c), "[a]n order of deportation or of exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws and regulations."

Harvard University. The IJ made the comment after Abramian's counsel had questioned Abramian at some length about the Harvard lawsuit. Rather than act irrationally, the IJ properly cut off testimony that was cumulative and not pertinent. Laurent v. Ashcroft, 359 F.3d 59, 62-63 (1st Cir. 2004). Second, the IJ's review of Abramian's asylum claim was proper because it was made in light of changed country conditions and a change in the country of deportation. Cf. 8 U.S.C. § 1101(a)(42)(A) (requiring country-specific showings for asylum relief). Third, Abramian's allegation that the IJ had the bomb squad investigate an envelope from the Boston Herald has no support in the record. Fourth, Abramian has not presented any evidence of bias beyond mere conjecture, nor does the record suggest any partiality. Finally, Abramian's desire to remain in the United States rather than be deported to any other country does not render him stateless. Nor is he rendered stateless by his failure to apply for citizenship that is available to him. E.g., Oboroznaya v. INS, 168 F.3d 500, 1998 WL 879709, *2 (9th Cir. 1998) (unpublished) (holding that BIA properly rejected stateless claim where petitioner was entitled to return to former Soviet country and obtain citizenship); see also Kovalev v. Ashcroft, 223 F. Supp.2d 688, 692 & n.3 (E.D. Pa. 2002) (rejecting stateless claim in habeas motion where petitioner was eligible to apply for Russian citizenship).

With respect to Abramian's claim that the IJ erred in denying his application for suspension of deportation based on failure to show extreme hardship, we lack jurisdiction to consider that claim. Mendes v. INS, 197 F.3d 6, 11 (1st Cir. 1999) (holding, under transitional rules, that existence of extreme hardship was determination committed to agency discretion and therefore unreviewable); Bernal-Vallejo, 195 F.3d at 63 (characterizing BIA determination that alien had not demonstrated extreme hardship as unreviewable discretionary decision).

Finally, there is Abramian's claim that the IJ violated his due process rights by not granting his counsel's request for a continuance to procure the testimony of an additional witness and by not allowing his counsel to present a closing argument. We review de novo the question of whether an administrative law judge's conduct violates due process. Aguilar-Solis v. INS, 168 F.3d 565, 568 (1st Cir. 1999). "An immigration judge, like other judicial officers, possesses broad (though not uncabined) discretion over the conduct of trial proceedings." Id.

There was no abuse of discretion here. As noted earlier, judges have considerable leeway to cut off cumulative or redundant testimony. Laurent, 359 F.3d at 63. In requesting a continuance to procure the testimony of an additional witness, Abramian's counsel stated that "there is a woman that we've been trying to chase down at the shelter who actually was a case worker and I

-4-

think would testify about his, not only his moral character but the kind of example he set in adversity." There was no issue concerning Abramian's moral character. Moreover, Abramian testified in detail about how, by working two jobs and continuing his education, he made a contribution to his community by setting a good example and becoming a role model to other homeless people. Other witnesses also gave evidence concerning Abramian's hard work and educational achievements. The IJ credited Ambramian's achievements but concluded that they were "largely for his self-improvement" and did not "constitute[] the type of contribution to the community that [the BIA] envisioned" to demonstrate extreme hardship. The proposed testimony would have merely reasserted information that the IJ considered and credited but deemed inadequate to establish extreme hardship.[2]

Nor did the IJ abuse her discretion by denying Abramian's counsel the opportunity to make a closing argument. While it may be better practice for an IJ to allow each party to present a closing argument, Abramian does not identify any prejudice resulting from his lack of an opportunity to do so, arguing only generally that a closing argument "would have helped

_____

[2] Abramian also failed to name this witness, indicate how long he believed it would take to find her and secure her testimony, or make a specific proffer of her testimony. Thus, there is no evidence that Abramian could have found and produced this witness, even if he had been granted a continuance.

-5-

the court to understand the significance of the evidence presented . . . and its relevance to the elements of his case." There is nothing in the record to indicate that the IJ did not fully understand the significance of the evidence presented. Rather, it appears that the IJ understood the evidence but did not believe that it warranted relief. E.g., Yap v. INS, 318 F.2d 839, 841 (7th Cir. 1963) (holding that IJ did not abuse discretion by failing to grant closing argument where "oral argument could have added nothing"); see also Castellano-Chacon v. INS, 341 F.3d 533, 553 (6th Cir. 2003) (holding that alien's contentions that he had no opportunity to present case in concise narrative form, to argue the law, or to hear his chosen advocate plead for his life did not establish prejudice).

The petition for review is denied. See 1st Cir. R. 27(c).